1  Geoffrey S. Kercsmar (#020528)
2  Gregory B. Collins (#023158)
   KERCSMAR & FELTUS PLLC
3  7150 East Camelback Road, Suite 285
   Scottsdale, Arizona 85251
4  (480) 421-1001
5  (480) 421-1002 fax
   gsk@kflawaz.com
6  gbc@kflawaz.com

7  *Attorneys for Plaintiff*

8
                    UNITED STATES DISTRICT COURT
9
                    FOR THE DISTRICT OF ARIZONA
10

11  In re: ME2 Productions Incorporated        No. CV-17-00210-PHX-GMS
                                                (LEAD CASE)
12

13                                              Consolidated with:
                                                No. CV-17-00216-PHX-GMS
14                                              No. CV-17-00217-PHX-GMS
                                                No. CV-17-00218-PHX-GMS
15                                              No. CV-17-00222-PHX-GMS
                                                No. CV-17-00581-PHX-GMS
16                                              No. CV-17-00587-PHX-GMS
                                                No. CV-17-00615-PHX-GMS
17                                              No. CV-17-00622-PHX-GMS
                                                No. CV-17-00623-PHX-GMS
18

19

20                                              **MOTION FOR ENTRY OF DEFAULT
                                                JUDGMENT AGAINST MELISSA
21                                              OLGUIN**

22

23         Pursuant to Rule 55(b)(2), Federal Rules of Civil Procedure, Plaintiff submits its Motion

24  for Default Judgment Against Defendant Melissa Olguin ("Defendant").

    **I.    Introduction**
25

26         Using the BitTorrent protocol, Defendant illegally downloaded Plaintiff's copyrighted

27  movie, *Mechanic: Resurrection*. It is undisputed that Defendant's infringement was willful and

28  intentional. Worse, because of the way the BitTorrent protocol works, Defendant's infringement

Kercsmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

1   is likely *ongoing*. Defendant's actions—along with the actions of many others engaged in illegal

2   file sharing—are taking a significant toll on the nation's movie industry. According to *Forbes*

3   magazine:

> Many think naively that studios cannot be hurt too much [by BitTorrent], because after all, you hear mostly about the movies that make hundreds of millions of dollars. But the reality for many filmmakers is that they often live on the edge, seeking financing to produce quality content, and enduring high uncertainty about whether they will be able to pay off debt and have any profit left. **Given the high fixed cost of producing a quality movie, losses from piracy can be the difference between making a profit or not.** Avi Lerner, producer of *Expendables 3*, paints a gloomy picture: '**If piracy continues to be rampant like this, then in four to five years it will be the end of the independent film business as we know it and the studios will be making way less films then they do now.'**

10  Nelson Granados, <u>How Piracy Is Still Hurting The Filmmakers And Artists You Admire</u>, *Forbes*,

11  December 3, 2015, http://www.forbes.com/sites/ nelsongranados/2015/12/03/how-piracy-hurts-

12  the-filmmakers-and-artists-you-admire/#60 42f49871b7 (emphasis added).[1] Lerner had a reason

13  to be pessimistic: his movie, *Expendables 3*, lost an estimated \$100 million due to copyright

14  infringement—which included over 40 million illegal downloads using BitTorrent websites. *Id.*

15  Movie-makers are not the only victims: the public also loses. "[A]long with billions of

16  dollars each year, digital theft has cost the U.S. entertainment industry countless jobs."

17  Department of Professional Employee's Fact Sheet, <u>Intellectual Property Theft: A Threat to U.S.</u>

18  <u>Workers, Industries, and Our Economy</u>, November 2015, <u>http://dpeaflcio.org/programs-</u>

19  <u>publications/issue-fact-sheets/intellectual-property-theft-a-threat-to-u-s-workers-industries-and-</u>

20  <u>our-economy/</u>. As one journalist explained,

> The motion picture, television, theater, and music industries are vital sectors of the U.S. economy. They employ millions of U.S. workers, generate revenues for local businesses and communities, and are among the all-too-few U.S. industries that generate substantial trade surpluses in the midst of growing U.S. trade deficits. The theft of copyrighted films, television shows, theatrical productions, and music costs the U.S. entertainment industries billions of dollars in revenue each year. ***That loss of revenue hits directly at bottom-line profits and those middle-class workers who earn their living in these industries.***

27  *Id.* (Emphasis added.)

28

---

[1] Copies of all periodicals cited herein are attached as Exhibit A.

Kercsmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

Kercsmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15

The public policy concerns that the Copyright Act was designed to protect are also harmed. The primary objective of the Copyright Act is not simply to reward the labor of authors "but '[t]o promote the Progress of Science and useful Arts.' To this end, copyright assures authors the right to their original expression, but encourages others to build freely upon the ideas and information conveyed by a work." *Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc.,* 499 U.S. 340, 349–50, 111 S. Ct. 1282, 1290, 113 L. Ed. 2d 358 (1991) (citations omitted). In other words, while the immediate effect of copyright law is to "secure a fair return for an author's creative labor," the ultimate aim is to "***stimulate artistic creativity for the general public good***." *Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 526–27, 114 S. Ct. 1023, 1029, 127 L. Ed. 2d 455 (1994) (emphasis added). It follows, then, that ignoring online copyright infringement will ultimately lead to a decline in the production of these creative works—particularly independent films that rarely can obtain financing. This in turn will hinder the Copyright Act's stated goal: promoting broad public availability of literature, music, and movies. The only way to curtail rampant and widespread copyright infringement is to impose penalties significant enough to deter would-be infringers from participating in online, peer-to-peer theft schemes.

16
17
18
19
20
21
22
23
24
25
26

For these reasons, Plaintiff ME2 Productions, Inc. ("Plaintiff") respectfully requests that the Court enter judgment in its favor against Defendant, including a statutory award of damages in the amount of $15,000.00 pursuant to 17 U.S.C. § 504(c).[2] Additionally, Plaintiff requests that the Court grant its request for injunctive relief, permanently barring Defendant from directly and contributorily infringing Plaintiff's copyright in the motion picture *Mechanic: Resurrection*. The Court should also issue an Order requiring Defendant to destroy all illegal copies of the copyrighted movie, including electronic files and copies transferred onto any physical medium or device in her possession, custody, or control. Finally, Plaintiff requests that the Court order Defendant to delete the software used to make or distribute copies of Plaintiff's copyrighted material or to exchange unlicensed content using the BitTorrent protocol, and to refrain from

27
28

[2] While Plaintiff is also entitled to an award of fees and costs.  But in similar cases that undersigned counsel has handled, the attorneys' fees incurred and costs incurred on any individual defendants have proven difficult to track. Given the likelihood of collection here the time incurred tracking and moving for an award of fees and costs is simply not justifiable here.

1    knowingly and willfully using BitTorrent or the Internet for copying or downloading content in

2    violation of U.S. copyright law in the future.

3    **II.    The Judgment Sought Here is Consistent with the Judgment Entered by the Arizona Federal District Court in *LHF Productions, Inc. v. Maritza Alvarez et. al., Case No. 2:16-cv-01196.***

4

5    In determining the amount of any judgment here, the Court should consider the Judgment

6    entered on December 13, 2016, in *LHF Productions, Inc. v. Maritza Alvarez et. al.,* Case No.

7    2:16-cv-01196.   (Final Judgment, attached as Exhibit D.)   While *LHF Productions, Inc. v.*

8    *Maritza Alvarez* involved a different plaintiff and different defendant, the matter was otherwise

9    very similar to this case.  In both cases, the defendants utilized a BitTorrent swarm to illegally

10   download the plaintiff's copyrighted major motion picture.  In both cases, the defendants were

11   served with process and failed to appear.   In both cases, the plaintiff sought an award of

12   $15,000.00 in statutory damages.  As set forth in the attached Final Default Judgment, as a result

13   of defendant's copyright infringement, the Court entered judgment against the defendant in the

14   amount of $15,000.00 in statutory damages, $4,500 in attorneys' fees, and $465 in costs, for a

15   total of $19,965.00.  The Court also granted injunctive relief.

16   **III.    Factual history**

17   Plaintiff is a Nevada Corporation that owns the copyright for the motion picture

18   *Mechanic: Resurrection* (the "Movie") under registration number PA 1-998-057. (Dkt. #32, at ¶

19   2, ¶ 13.)  Plaintiff filed this action after discovering that Defendant had illegally downloaded the

20   Movie using the BitTorrent protocol. (*Id.* ¶ 7.) BitTorrent is an interactive "peer-to-peer" ("P2P")

21   file transfer technology protocol whereby users can: (a) make media files (including entire

22   movies) stored on each user's computer available for copying by other users or peers; (b) search

23   for files that are stored on other users' computers; and (c) transfer exact copies of those files

24   from one computer to another via the internet. (*Id.* ¶¶ 17-22.)

25   There is no question that Defendant—without Plaintiff's authorization or license—

26   intentionally and knowingly used the BitTorrent protocol to download and distribute the Movie.

27   (*Id.* ¶ 7.) First, common sense dictates that Defendant knew he was illegally obtaining

28   copyrighted material. Like almost any motion picture, *Mechanic: Resurrection* contains a

Kercsmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

4

Kercsmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

copyright notice at the very beginning of the film stating that it is protected by copyright laws and infringement is punishable. (*Id.* ¶ 31.) Additionally, the Movie is obviously the costly professional work of a creative business—it was made using professional performers, directors, cinematographers, lighting technicians, set designers, editors, and professional-grade equipment such as cameras, lighting, and editing equipment—putting Defendant on notice of its copyrighted status. (*Id.* ¶ 30.) Second, obtaining the Movie required Defendant to take several deliberate steps in order to obtain a viewable version. Defendant first had to knowingly and intentionally download and install the BitTorrent "client" application. (*Id.* ¶ 36.) Because the "client" application cannot typically search for torrent files on its own, Defendant also had to seek out BitTorrent sites using a standard web browser. (*Id.* ¶¶ 38-39.) Defendant then had to log into one of many BitTorrent client repositories, which are well-known among users for their large index of copyrighted movies, television shows, software, and adult videos. (*Id.* ¶ 39.) And after logging in, Defendant had to deliberately: (1) obtain a torrent file from the index; (2) load it into a computer program designed to read such files and download the copyrighted material; and (3) enter into a BitTorrent swarm particular to Plaintiff's Movie, all with the goal of downloading (and therefore reproducing and distributing) the copyrighted material. (*Id.* ¶¶ 35-41.) Finally, Defendant was aware that he did not pay for the copyrighted material, and he did not take any steps to obtain a valid copy or license.

**IV.    Procedural history**

After discovering Defendant's infringing conduct, Plaintiff commenced this action by filing its Complaint on February 27, 2017 against thirty-two Doe individuals. (Dkt. #1.) Thereafter, Plaintiff was able to ascertain the true identity of the individuals who illegally downloaded and distributed the Movie by subpoenaing Defendant's Internet Service Provider, Cox Communications.   Plaintiff's Complaint was then amended to specifically identify the infringers. (*Id.*) Plaintiff personally served the now-identified Defendant with a summons on September 13, 2017 (Dkt. #58), making Defendant's answer due on October 4, 2017. *See* Fed. R. Civ. P. 12(a)(1)(A). When Defendant failed to appear, plead, or otherwise defend, Plaintiff filed

1   a Rule 55(a) request for the entry of default on October 26, 2017 (Dkt. #78), which was promptly

2   granted by the Court. (Dkt. #81.)

3   **V.     Plaintiff is entitled to a default judgment, including an award of statutory damages**.

4          Despite being personal served with a copy of the Amended Complaint, Defendant has

5   failed to appear. As a result, Plaintiff requested and received an entry of default. (Dkt. ##78,81.)

6   And because Defendant has chosen to default instead of defending, he has admitted the truth of

7   the allegations asserted in the Amended Complaint. *TeleVideo Sys., Inc. v. Heidenthal,* 826 F.2d

8   915, 917–18 (9th Cir. 1987) ("The general rule of law is that upon default the factual allegations

9   of the complaint, except those relating to the amount of damages, will be taken as true.").

10  Plaintiff now respectfully requests that this Court enter a default judgment against Defendant.

11         When evaluating whether to grant a judgment by default, courts consider a number of

12  factors, including:

13         (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's
       substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at
14     stake in the action, (5) the possibility of a dispute concerning material facts, (6)
       whether the default was due to excusable neglect, and (7) the strong policy
15     underlying the Federal Rules of Civil Procedure favoring decisions on the
       merits.

16  *Twentieth Century Fox Film Corp. v. Streeter*, 438 F. Supp. 2d 1065, 1070 (D. Ariz. 2006)

17  (granting a copyright holder default judgment and awarding statutory damages of $6,000.00,

18  attorneys' fees, and costs) (quoting *Eitel v. McCool,* 782 F.2d 1470, 1471–72 (9th Cir.1986)). All

19  of these factors support the conclusion that Plaintiff is entitled to a default judgment.

20       **1.    The possibility of prejudice to Plaintiff**

21         Plaintiff would certainly be prejudiced if the Court declines to enter default judgment, for

22  it would leave Plaintiff without any remedy against Defendant, who has failed to even show up

23  and contest this dispute. "If Plaintiff['s] motion for default judgment is not granted, Plaintiff[]

24  will likely be without other recourse for recovery." *PepsiCo, Inc. v. California Sec. Cans,* 238 F.

25  Supp. 2d 1172, 1177 (C.D. Cal. 2002). Despite the fact that Defendant doesn't deny that Plaintiff

26  is entitled to an award of statutory damages, attorneys' fees, costs, and a permanent injunction, if

27  this Court refuses to enter a default judgment against her, Plaintiff would be left unable to seek

28

Kercsmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

damages or even to prevent Defendant from brazenly continuing to infringe Plaintiff's copyright.

Indeed, a refusal would entirely frustrate both the Copyright Act and the civil justice system.

### 2. & 3. The merits of Plaintiff's substantive claim and the sufficiency of Amended Complaint

Plaintiff has adequately pled its claim for copyright infringement. A plaintiff asserting a copyright infringement claim must demonstrate: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Pubs., Inc. v. Rural Telephone Service Co., Inc.,* 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991); *LGS Architects, Inc. v. Concordia Homes of Nevada,* 434 F.3d 1150, 1156 (9th Cir. 2006). In its Amended Complaint, Plaintiff alleged that it owns the copyright for the Movie and attached a valid Certificate of Copyright Registration issued by the Register of Copyrights. (Dkt. #14 ¶ 26 Dkt. #14-1.) "Registration is prima facie evidence of the validity of a copyright." *Three Boys Music Corp. v. Bolton,* 212 F.3d 477, 488–89 (9th Cir. 2000)(citing 17 U.S.C. § 410(c) (1994)). Moreover, because the factual allegations of the Amended Complaint are deemed true, Plaintiff has conclusively established that Defendant infringed upon Plaintiff's copyright and that her infringement was both knowing and willful. (Dkt. #214 ¶¶ 7, 50-57.)

### 4. The sum of money at stake in the action

The Copyright Act provides that "an infringer of copyright is liable for . . . . (2) statutory damages, as provided by subsection (c)." 17 U.S.C. § 504(a)(2). In the Digital Theft Deterrence Act of 1999, Congress amended the Copyright Act to *increase* the penalties for copyright infringement in response to rampant and blatant online infringement:

> Many computer users are either ignorant that copyright laws apply to Internet activity, or they simply believe that they will not be caught or prosecuted for their conduct. Also, many infringers do not consider the current copyright infringement penalties a real threat and continue infringing, even after a copyright owner puts them on notice that their actions constitute infringement and that they should stop the activity or face legal actions. In light of this disturbing trend, it is manifest that Congress respond appropriately with updated penalties to dissuade such conduct.

H. R. Rep. No. 106-216 at 3 (1999). For *unintentional* infringement, 17 U.S.C. § 504(c) provides that "the copyright owner may. . . recover . . . an award of statutory damages for all infringements involved in the action, with respect to any one work. . . a sum of not less than

Kercsmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

Kersmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

$750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). But upon finding that the infringement was *willful*, the Court may "increase the award of statutory damages to a sum of not more than $150,000." 17 U.S.C. § 504(c)(2).

Given the legislative history, Plaintiff's request for a statutory damage[3] award of $15,000 is well within the bounds permitted by the Copyright Act. Indeed, because Defendant admitted that the infringement was intentional, an even more substantial statutory award could be justified. Because of Defendant's use of the BitTorrent protocol, the infringement cannot be limited to a single act damaging Plaintiff. Instead, Defendant has likely contributed to—and continues to contribute to—other individuals infringing on Plaintiff's Movie, justifying a larger award.[4] Moreover, Defendant must face a penalty significant enough to deter others from participating in BitTorrent's peer-to-peer theft scheme. If individual infringers are not held accountable for their wrongful conduct, copyright infringement will continue to run rampant on the internet and, "[l]ong term, movies and TV and other content simply won't be created in the first place. *One may think an individual act of piracy doesn't matter, but if that becomes a way of life then the value of intellectual property becomes eroded, shows like Downton Abbey won't get made*." Movie piracy: threat to the future of films intensifies, The Guardian, July 17, 2014, https://www.theguardian.com/film/2014/jul/17/digital-piracy-film-online-counterfeit-dvds (emphasis added).

Despite this Court's authority to award statutory damages of up to $150,000 for Defendant's willful infringement, Plaintiff seeks only $15,000 in statutory damages. This amount is less than or comparable to awards issued by other courts in similar circumstances. *See, e.g., Malibu Media, supra,* 2013 WL 6178926 at *1 (awarding $51,750 in statutory damages where, by virtue of entry of default, it had been established that defendant willfully infringed plaintiff's copyright); *see also Flava Works, Inc. v. Fisher,* 12-CV-1888, Docket Number 20 (N.D. Ill.,

---

[3] Because Plaintiff seeks an award of statutory damages, Plaintiff is not required to prove actual damages; instead, it may elect to seek statutory damages "regardless of the adequacy of the evidence offered as to [its] actual damages and the amount of Defendant's profits." *Columbia Pictures Television, Inc. v. Krypton Broad. Of Birmingham, Inc.,* 259 F.3d 1186, 1194 (9th Cir. 2001) cert. denied, 534 U.S. 1127, 112 S. Ct. 1063 (2002).

[4] For additional analysis on the likelihood that Defendant has contributed to the continued infringement of Plaintiff's copyrighted material, see Section IV.

1   October 30, 2012) (Lee, J.) (awarding $1,500,000 in statutory damages in addition to attorneys'

2   fees and costs on default); *Cobbler Nevada v. Jokic*, 8:15-cv-2653 -T-27TBM, Docket Number

3   20 (M.D. Fl. June 22, 2016) (awarding $15,000 in statutory damages, and $2,437 in costs and

4   fees); *Cobbler Nevada v. Woodward*, 8:15-cv-2652-T-33AEP, Docket Number 25 (M.D. Fl. June

5   7, 2016) (H. Covington) (awarding $15,000 in statutory damages, and $3,382 in costs and fees);

6   *The Bicycle Peddler, LLC v. Kovatchev,* 13-CV-7012, Docket No. 35 *N.D. Ill., December 9,

7   2014) (Darrah, J.) (awarding $10,000 in statutory damages, $9,116.00 in attorneys' fees and

8   $755.78 in costs).[5]

9       Nominal damages in this case would be insufficient because Defendant has caused

10  significant harm to Plaintiff. In addition, an award of $15,000 is not only justified by the

11  admittedly willful nature of Defendant's infringement, but also furthers the purposes of the

12  Copyright Act by (1) protecting the public's interest in the creation and development of the arts

13  and (2) deterring others from infringing on Plaintiff's copyright. For these reasons, Plaintiff's

14  request for statutory damages is both restrained and appropriate.

### 5. The possibility of a dispute concerning the material facts

16      There is no possibility of a dispute arising as to any material fact in this case. Because of

17  Defendant's default, this Court must take the factual allegations asserted in the Amended

18  Complaint as true. *See TeleVideo Sys., Inc. v. Heidenthal, supra,* 826 F.2d at 917–18. Moreover,

19  Defendant has not made any attempt to contest those allegations (or for that matter, even

20  bothered to appear).

### 6. Whether the default was due to excusable neglect

22      Defendant's default is not the result of excusable neglect. Defendant was personally

23  served with a Summons and the Amended Complaint on September 13, 2017. (Dkt. #58.)

24  Plaintiff also mailed Defendant a copy of the Rule 55(a) Request for Entry of Default and a copy

25  of the Clerk's Entry of Default. (*See* Exhibit B, Declaration of G. Collins.) Thus, on several

26  occasions, Defendant has been provided with notice of this proceeding—and of the risks for

27  failing to appear. Accordingly, Defendant's decision to neither appear nor defend "cannot be

28

[5] As a courtesy, Plaintiff has attached the referenced judgments as Exhibit C.

1   attributed to excusable neglect." *Shanghai Automation Instrument Co., Ltd. v. Kuei,* 194

2   F.Supp.2d 995, 1005 (N.D.Cal. 2001) (reasoning that excusable neglect is not present when

3   Defendant "were properly served with the Complaint, the notice of entry of default, as well as

4   the papers in support of the instant motion").

### 7.   The policy considerations

While it is true that "cases should be decided upon their merits whenever reasonably possible," Defendant's failure to respond to this lawsuit makes achieving a ruling on the merits entirely unfeasible. *See Pena v. Seguros La Comercial, S.A.,* 770 F.2d 811, 814 (9th Cir. 1985). Accordingly, the only way for this case to reach a resolution of any kind is to award Plaintiff default judgment. Absent a judgment by default, Plaintiff will not be made whole—and has no mechanism to prevent further infringement of its copyright by this same Defendant.

In summary, as demonstrated above, all of the factors weigh in favor of granting Plaintiff a default judgment against Defendant.

## VI.   Plaintiff is entitled to injunctive relief.

The Court is authorized to grant permanent injunctive relief to prevent or restrain copyright infringement. *See* 17 U.S.C. § 502(a)(2) ("Any court having jurisdiction of a civil action arising under this title may, subject to the provisions of section 1498 of title 28, grant temporary and final injunctions on such terms as it may deem reasonable to prevent or refrain infringement of a copyright.") The Copyright Act further provides that "the court may order the destruction. . . of all copies . . . found to have been made or used in violation of the copyright owner's exclusive rights . . . ." 17 U.S.C. § 503(b).

Permanent injunctions are commonplace in these cases: "As a general rule, a permanent injunction will be granted when liability has been established and there is a threat of continuing violations." *MAI Systems Corp. v. Peak Computer, Inc.,* 991 F.2d 511, 520 (9th Cir.1993). Moreover, irreparable harm is ***presumed*** in copyright infringement cases on a showing of success on the merits. *See A & M Records, Inc. v. Napster, Inc.,* 114 F.Supp.2d 896, 925 (N.D.Cal.2000) *reversed in part on other grounds, citing Micro Star v. Formgen Inc.,* 154 F.3d 1107, 1109 (9th Cir.1998); *see also Princeton Univ. Press v. Michigan Document Serv., Inc.,* 99 F.3d 1381, 1392–93 (6th Cir.1996) (holding the weight of authority supports the extension of

Kercsmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

Kercsmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

injunctive relief to future work). Given this statutory framework, courts routinely issue injunctive relief as part of a default judgment where, as here, an online media distribution system was used to download and distribute copyrighted works without permission. *See, e.g., Warner Bros. Records, Inc. v. Novak,* 2007 WL 1381748 at \*2-3 (D. N.J. 2007) (issuing a permanent injunction enjoining Defendant from infringing on plaintiff's copyrighted recordings in the future).

Here, Plaintiff has demonstrated that there is a high likelihood of continuing violations of Plaintiff's copyright if Defendant is not enjoined. Because of the way the BitTorrent protocol operates, every downloader of the content is also an uploader; thus, the distributed nature of BitTorrent leads to a rapid, almost viral, spreading of a file through peer users. (Dkt. #14, ¶ 20.) This also means that every user who has a copy of the infringing material may also be a source for *later* downloads of the material, so long as the first user remains part of the BitTorrent network and is online at the time a subsequent user requests the file. (*Id.*) Such widespread and uncontrolled infringement is, by its very nature, irreparable. Accordingly, unless this Court grants an injunction, Defendant will likely be the source for others to download the Movie over and over. Granting an injunction is the only want to prevent further infringement. Nor will Defendant be harmed if he is enjoined from this conduct in the future—only *illegal* conduct will be prohibited.

For these reasons, Plaintiff respectfully requests that the Court grant Plaintiff injunctive relief prohibiting Defendant from directly and contributorily infringing Plaintiff's copyrighted Movie in the future. Additionally, Plaintiff requests that the Court order Defendant to destroy all copies of the Movie that he made or used in violation of Plaintiff's copyright.

**VII.    Conclusion.**

Plaintiff filed this lawsuit to protect its copyrighted movie from online piracy. It is undisputed that Defendant willfully and intentionally infringed Plaintiff's copyright using the BitTorrent protocol. Defendant's blatant disregard of copyright laws warrants a significant statutory award, not only to protect Plaintiff's interest, but also to deter others from illegally downloading copyrighted movies using software like BitTorrent. As explained above, the

damaging effects of online, peer-to-peer copyright infringement are widespread. Individuals utilizing the BitTorrent protocol to steal copyrighted material for their own benefit are doing it at society's detriment. Put bluntly, Defendant is playing a part in an online theft scheme that is (1) costing the movie industry billions of dollars each year, (2) damaging the U.S. economy through significant job loss, and (3) putting the Copyright Act's mission (*i.e.*, promoting science and the "useful Arts") at risk.

Accordingly, Plaintiff respectfully requests that the Court enter default judgment against Defendant and issue an award of statutory damages in the amount of $15,000.00. Additionally, Plaintiff requests that the Court permanently enjoin Defendant from directly and contributorily infringing Plaintiff's copyrighted material, and order Defendant to destroy all copies of the copyrighted material. Finally, Plaintiff requests that the Court order Defendant to delete all software used to make, exchange or distribute copies of Plaintiff's copyrighted material using the BitTorrent protocol, and to refrain from knowingly and willfully using BitTorrent or the Internet for copying or downloading content in violation of U.S. copyright law.

A proposed Order granting the requested relief has been submitted herewith.

RESPECTFULLY SUBMITTED this 12th of December, 2017.

KERCSMAR & FELTUS PLLC


By  *s/Greg Collins*
Geoffrey S. Kercsmar
Gregory B. Collins
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
*Attorneys for Plaintiff*

Kercsmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

12

Keresmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

1

## **CERTIFICATE OF SERVICE**

2
3
4

I certify that on December 12, 2017, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and mailed a copy of the foregoing to the following:

5
6
7

Melissa Olguin
17631 W. Saguaro Lane
Surprise, AZ 85388
*Defendant*

8
9
10

Jerel and Jane Doe Antal
2609 E. Rivera Dr.
Chandler, AZ 85249
*Defendants*

11
12
13
14

Veronica and Jamie Carreon
2626 N. 50th Lane
Phoenix, AZ 85035
*Defendants*

15
16
17

Marco Medina
1801 N. 66th Dr.
Phoenix, AZ 85035
*Defendant*

18
19

*s/Brandi Bies*

20
21
22
23
24
25
26
27
28